## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

TERRELL JAMES LITTLEJOHN, SR.,    )
       )
       Petitioner,    )
       )
v.       )    **Case No. 18-CV-0477-CVE-JFJ**
       )
SCOTT CROW,[1]    )
       )
       Respondent.    )

## OPINION AND ORDER

Petitioner Terrell Littlejohn, a state inmate appearing pro se,[2] commenced this action in 2018 by filing a 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. # 1) and supporting brief (Dkt. # 2). Littlejohn seeks federal habeas relief from the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2015-1222, and asserts three constitutional claims. Respondent Scott Crow filed a response (Dkt. # 8) in opposition to the petition and provided state court records (Dkt. ## 8, 9, 10) necessary to adjudicate Littlejohn's claims. In 2021, Littlejohn filed a motion (Dkt. # 17) to stay this habeas proceeding pending his exhaustion of available state remedies as to a fourth claim not raised in his petition. Crow filed a response (Dkt. # 18) in opposition to the motion, urging the Court to deny Littlejohn's request for a stay. For the reasons discussed below, the Court denies the motion to stay and denies the petition for writ of habeas corpus.

---

[1]    Pursuant to FED. R. CIV. P. 25(d), the Court substitutes Scott Crow, Director of the Oklahoma Department of Corrections ("ODOC"), in place of Joe Allbaugh, the ODOC's former director, as party respondent. The Clerk of Court shall note this substitution on the record.

[2]    The Court liberally construes Littlejohn's petition and motion because he appears pro se in this matter. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## BACKGROUND[3]

### I.    State court proceedings

In 2015, a Tulsa County jury convicted Littlejohn of first degree burglary (count one), robbery with a dangerous weapon (count two), sexual battery (count three), second degree rape by instrumentation (count four), forcible oral sodomy (count five), and kidnapping (count six), each after former conviction of two or more felonies.  Dkt. # 8-4, Littlejohn v. State, No. F-2015-981 (Okla. Crim. App. 2017) ("OCCA Op."), at 1.[4]  The jury affixed punishment at 20 years' imprisonment (count one), 30 years' imprisonment (count two), 20 years' imprisonment (count three), life imprisonment (count four), life imprisonment (count five), and 20 years' imprisonment (count six). Dkt. # 8-4, OCCA Op., at 1-2.  The trial court sentenced Littlejohn accordingly, ordered counts one and two to be served concurrently with each other, and ordered counts three through six to be served concurrently with each other and consecutively to counts one and two.  Dkt. # 8-4, OCCA Op., at 2.

Represented by appellate counsel, Littlejohn filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"), claiming (1) that the trial court abused its discretion by admitting "irrelevant" statements he made during a videotaped post-arrest interview and (2) that trial counsel's deficient and prejudicial performance, in failing to renew an objection to the admission of those

---

[3]    This background section primarily focuses on the procedural background.  Additional facts relevant to Littlejohn's specific claims are developed in the discussion section.

[4]    The Court's citations to the record generally refer to the CM/ECF header page number found in the upper right-hand corner of each document.  For citations to transcripts of the trial (e.g., Tr. Trial vol. __) or citations to the original record (e.g., O.R. vol. __), the Court cites the CM/ECF header pagination but includes the original page numbers in brackets, to the extent the original page numbers are different.

statements and in failing to request a limiting instruction regarding statements made by the interviewing detective, deprived him of his constitutional right to the effective assistance of counsel. Dkt. # 8-1, Appellant's Br., at 2; Dkt. # 8-4, OCCA Op., at 2-4.  In an unpublished opinion filed April 11, 2017, the OCCA rejected both claims on the merits and affirmed Littlejohn's convictions and sentences. Dkt. # 8-4, OCCA Op., at 1-6.  Littlejohn did not file a petition for writ of certiorari in the United States Supreme Court ("Supreme Court").  Dkt. # 1, Pet., at 3.

On January 8, 2018, Littlejohn, proceeding pro se, filed an application for postconviction relief in the District Court of Tulsa County ("state district court"), primarily alleging that his convictions and sentences are unconstitutional because the State of Oklahoma ("the state") filed an unverified information to initiate his criminal prosecution, contrary to Oklahoma law, thereby depriving the trial court of jurisdiction over his criminal prosecution. Dkt. # 8-5, Appl., at 1, 4.[5]  The state district court denied the application in an order filed May 29, 2018. Dkt. # 8-7, Dist. Ct. Order, at 1, 3.  The state district court construed the application as asserting three related claims:  (1) that the state's failure to file a verified information, as required by Oklahoma law, deprived the trial court of jurisdiction, (2) that trial counsel was ineffective for failing to challenge the trial court's jurisdiction, and (3) that the state's prosecution of Littlejohn, in the absence of jurisdiction, deprived him of due process and equal protection of the law.  Dkt. # 8-7, Dist. Ct. Order, at 3.  The state district court denied relief as to all three claims, finding them procedurally barred because they could have been raised on direct appeal.  Dkt. # 8-7, Dist. Ct. Order, at 4.  Notwithstanding its application

---

[5]     Littlejohn originally styled the application as a petition for writ of habeas corpus, but he later moved the state district court to treat the petition as an application for postconviction relief filed pursuant to Oklahoma's Post-Conviction Procedure Act, OKLA. STAT. tit. 22, § 1080 et seq.  See Dkt. ## 8-5, 8-6.

of the procedural bar, the state district court rejected the merits of one claim:  Littlejohn's claim that the trial court lacked jurisdiction.  Dkt. # 8-7, Dist. Ct. Order, at 4-5.  The state district court reasoned that the Oklahoma Constitution does not require the state to file a verified information and that the state properly invoked the trial court's jurisdiction by filing an information in the proper venue, alleging that Littlejohn committed public offenses in Tulsa County, and by conducting a preliminary hearing.  Dkt. # 8-7, Dist. Ct. Order, at 4-5.

Littlejohn filed a postconviction appeal, ostensibly raising the same three claims he asserted in his application for postconviction relief.  Dkt. # 8-8, Pet'r's PC Appeal Br., at 1-11.[6]  The OCCA affirmed the denial of postconviction relief in an order filed August 3, 2018.  Dkt. # 8-9, Littlejohn v. State, No. PC-2018-634 (Okla. Crim. App. 2018) ("OCCA Order"), at 1.  Without identifying or discussing Littlejohn's specific claims, the OCCA declined to "reach the merits of [his] claims because the issues could have been raised in his direct appeal" and were therefore waived.  Dkt. # 8-9, OCCA Order, at 2.

## II.    Federal court proceedings

Littlejohn filed the instant petition for writ of habeas corpus, along with a brief in support, on September 13, 2018.  He identifies three constitutional claims:  (1) the trial court lacked jurisdiction because the state did not file a verified information to commence his criminal prosecution, as required by state law, thereby depriving him of due process and equal protection of the law, (2) the trial court deprived him of his fundamental right to a fair trial by erroneously admitting "irrelevant" statements he made during a videotaped post-arrest interview, and (3) trial

---

[6]    Littlejohn's postconviction appeal brief (Dkt. # 8-8) reasserts the same arguments from his application for postconviction relief (Dkt. # 8-5), but the former includes some additional language asserting that the state district court erroneously denied his application.

counsel's deficient and prejudicial performance, in (a) failing to challenge the allegedly defective information, (b) failing to renew an objection to the admission of the challenged evidence, and (c) failing to request a jury instruction, deprived him of his constitutional right to the effective assistance of counsel. Dkt. # 1, Pet., at 4-7; Dkt. # 2, Pet'r's Br., at 3-19. Crow concedes that the petition is timely, under 28 U.S.C. § 2244(d)(1)(A), and that Littlejohn exhausted available state remedies as to each claim raised therein, as required by 28 U.S.C. § 2254(b)(1). Dkt. # 8, Resp. to Pet., at 2. But Crow contends that the procedural-default doctrine bars relief as to the first claim and that 28 U.S.C. § 2254(d) bars relief as to the second and third claims. Dkt. # 8, Resp. to Pet., at 7-29.

On May 10, 2021, Littlejohn filed a motion asking this Court to stay this habeas proceeding and hold his petition in abeyance, pursuant to Rhines v. Weber, 544 U.S. 269, 278 (2005), so that he may exhaust available state remedies as to a new claim that, in light of McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), the state lacked subject-matter jurisdiction over his criminal prosecution because he "is a Native American by lineal descent, [t]hrough the Muscogee (Creek) Nation." Dkt. # 17, Mot., at 1-2. Crow opposes a stay, arguing that even if a Rhines stay is available when a petitioner has filed a timely petition that asserts only exhausted claims, the circumstances of this case do not support granting Littlejohn's request for a stay. Dkt. # 18, Resp. to Mot., at 3-9.

### *DISCUSSION*

## I.    **Legal framework**

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of Littlejohn's request for a stay and his petition for writ of habeas corpus. Because he is a state prisoner in custody under a state-court judgment, this Court may not grant Littlejohn federal habeas relief on the merits of his claims unless he shows that he "is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254 and federal habeas jurisprudence place additional limits on this Court's ability to grant habeas relief to a state prisoner.

First, the AEDPA requires state prisoners to exhaust available state remedies as to any federal claims before filing a federal habeas petition, 28 U.S.C. § 2254(b)(1), and "prohibits federal courts from granting habeas relief to state prisoners who have not exhausted available state remedies," Ellis v. Raemisch, 872 F.3d 1064, 1076 (10th Cir. 2017). To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Second, the judicially-created procedural-default doctrine, which has been described as "an important 'corollary' to the exhaustion requirement," may bar relief. Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) (quoting Dretke v. Haley, 541 U.S. 386, 392 (2004)). Ordinarily, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." Davila, 137 S. Ct. at 2064. "A state court finding of procedural default is independent if it is separate and distinct from federal law," and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'" Duvall v. Reynolds, 139 F.3d 768, 796-97 (10th Cir. 1998) (quoting Hathorn v. Lovorn, 457 U.S. 255, 263 (1982)). "In all cases in which a state prisoner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).[7]

Third, the "AEDPA prohibits federal habeas relief for any claim adjudicated on the merits in state court, unless one of the exceptions listed in § 2254(d) obtains." Premo v. Moore, 562 U.S. 115, 121 (2011). Specifically, a federal court may not grant habeas relief unless the petitioner first demonstrates that the state court's adjudication of his or her federal claims "resulted in a decision that" either (1) "was contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), (2) "involved an unreasonable application of clearly established Federal law," id.,[8] or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding," id. § 2254(d)(2). "A state-court decision is only contrary to clearly established federal law if it 'arrives at a conclusion opposite to that reached by' the Supreme Court, or 'decides a case differently' than the Court on a 'set of materially indistinguishable facts.'" Wood v. Carpenter, 907 F.3d 1279, 1289 (10th Cir. 2018) (quoting Terry Williams, 529 U.S. at 412-13). "A state court's decision unreasonably applies federal law if it 'identifies the correct governing legal principle' from the relevant Supreme Court decisions but applies those principles in an objectively unreasonable

---

[7]     In some circumstances, the federal court may overlook the procedural default and deny habeas relief on the merits. See Smith v. Duckworth, 824 F.3d 1233, 1242 (10th Cir. 2016) (explaining that "where 'the claim may be disposed of in a straightforward fashion on substantive grounds,' this court retains discretion to bypass the procedural bar and reject the claim on the merits." (quoting Revilla v. Gibson, 283 F.3d 1203, 1210-11 (10th Cir. 2002))); Cain v. Redman, 947 F.2d 817, 820 (6th Cir. 1991) ("[A]s the Supreme Court has pointed out, the doctrines of exhaustion and procedural default raise only federal-state comity concerns and are not a jurisdiction limitation on the power of the court.").

[8]     As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (quoting Terry Williams v. Taylor, 529 U.S. 362, 412 (2000)).

manner." Wood, 907 F.3d at 1289 (quoting Wiggins v. Smith, 539 U.S. 510, 520 (2003)).  But "a state court's application of federal law is only unreasonable if 'all fairminded jurists would agree that the state court decision was incorrect.'"  Id. (quoting Frost v. Pryor, 749 F.3d 1212, 1225 (10th Cir. 2014)).  Lastly, "a state-court decision unreasonably determines the facts if the state court 'plainly misapprehend[ed] or misstate[d] the record in making [its] findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim.'"  Id. (alterations in original) (quoting Byrd v. Workman, 645 F.3d 1159, 1170-72 (10th Cir. 2011)).  In addition to § 2254(d)'s deferential standards, a federal court must presume the correctness of the state court's factual findings unless the petitioner rebuts that presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  These standards make it difficult, but not impossible, to obtain federal habeas relief on "claims already rejected in state proceedings."  Harrington v. Richter, 562 U.S. 86, 102 (2011).

Fourth, in most cases, a state prisoner must file a federal habeas petition within one year of the date his or her state-court judgment became final on the conclusion of direct review.  28 U.S.C. § 2244(d)(1); Gonzalez v. Thaler, 565 U.S. 134, 150 (2012).  That one-year limitation period is tolled during the time that a properly filed application for postconviction relief or other collateral review is pending in state court.  28 U.S.C. § 2244(d)(2).

Finally, even if the petitioner either satisfies § 2254(d)'s exacting standards or makes the necessary showings to overcome the procedural default of a federal claim, the petitioner is not necessarily entitled to habeas relief.  Rather, in these situations, the federal court must review the petitioner's federal claims de novo.  See Jeremy Williams v. Trammell, 782 F.3d 1184, 1191 (10th Cir. 2015) (noting de novo review applies to claims not adjudicated on the merits in state court); Milton v. Miller, 744 F.3d 660, 670-71 (10th Cir. 2014) (discussing de novo review of claims when

petitioner overcomes § 2254(d)'s relitigation bar).  If the federal court finds a constitutional error on

de novo review, it "must assess the prejudicial impact of [the] constitutional error . . . under the

'substantial and injurious effect' standard set forth in Brecht [v. Abrahamson, 507 U.S. 619 (1993)],

whether or not the state appellate court recognized the error and reviewed it for harmlessness under

the 'harmless beyond a reasonable doubt' standard set forth in Chapman[v. California], 386 U.S. 18

[(1967)]."  Fry v. Pliler, 551 U.S. 112, 121-22 (2007).  Under the Brecht standard, a federal court

will grant habeas relief only if the court "is in grave doubt as to the harmlessness of an error that

affects substantial rights."  O'Neal v. McAninch, 513 U.S. 432, 445 (1995).

Before examining Littlejohn's federal claims within this framework, the Court must first

consider his request to stay this habeas proceeding so that he may exhaust a new claim not raised in

the petition.

## II.    Motion to stay

Littlejohn requests a Rhines stay and suggests that he will seek leave to amend his petition

after he exhausts available state remedies as to his McGirt claim.  Dkt. # 17, Mot., at 1.  Crow

opposes a stay for several reasons.  Dkt. # 18, Resp. to Mot., at 3-9.  For the reasons stated below,

the Court denies the motion.

In Rhines, the Supreme Court held that a federal court may grant a stay, and hold a habeas

petition in abeyance, rather than dismissing the petition, when the petitioner has filed a "mixed

petition," i.e., a petition containing both exhausted and unexhausted claims.  544 U.S. at 275-78; see

also Doe v. Jones, 762 F.3d 1174, 1181 (10th Cir. 2014) (extending Rhines to allow application of

stay-and-abeyance procedure for unmixed petitions containing only unexhausted claims in certain

circumstances).  But the Rhines Court cautioned that the stay-and-abeyance procedure "should be

available only in limited circumstances." <u>Rhines</u>, 544 U.S. at 277.  A stay should be granted only if (1) the petitioner shows "good cause for [the] failure to exhaust" the unexhausted claims, (2) the "unexhausted claims are potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  <u>Rhines</u>, 544 U.S. at 278.  Notably, neither <u>Rhines</u> nor <u>Doe</u> contemplates the use of the stay-and-abeyance procedure when, as here, a petitioner files a timely petition asserting only exhausted claims and the petitioner seeks a stay solely to return to state court to exhaust a new claim that is not included in the petition.  Nevertheless, even assuming <u>Rhines</u> might apply in this situation, the Court agrees with Crow that a stay is not warranted under the circumstances of this case.

As previously stated, Littlejohn suggests that he will seek leave to amend his petition to include the newly-asserted <u>McGirt</u> claim after he exhausts available state remedies as to that claim. Federal Rule of Civil Procedure 15 governs a party's request to amend a habeas petition.  <u>See</u> 28 U.S.C. § 2242 (providing habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); <u>see</u> also <u>Mayle v. Felix</u>, 545 U.S. 644, 655-65 (2005) (discussing application of Rule 15 in habeas context).  Because Crow filed a response to the petition, Littlejohn may not amend his petition without leave of court.  FED. R. CIV. P. 15(a)(2).  And a "court should freely give leave" to amend pleadings "when justice so requires."  <u>Id.</u>  But Rule 15(a) also permits a court "to deny a motion to amend because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'"  <u>Stafford v. Saffle</u>, 34 F.3d 1557, 1560 (10th Cir. 1994) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

10

Here though, as Crow contends, amendment would be futile because the newly-asserted McGirt claim is untimely and does not relate back to any of Littlejohn's original claims.  As previously stated, the AEDPA ordinarily requires a state prisoner to file one federal habeas petition, that presents all federal claims challenging the constitutional validity of his or her state-court judgment, within one year of the date the judgment became final following the conclusion of direct review.  28 U.S.C. § 2244(d)(1)(A); Gonzalez, 565 U.S. at 150; Felix, 655-56.  Applying § 2244(d)(1)(A), Littlejohn's convictions became final on July 11, 2017, 90 days after the OCCA issued its decision regarding his direct appeal, when the time expired for Littlejohn to file a petition for writ of certiorari in the Supreme Court.  Gonzalez, 565 U.S. at 150.  Littlejohn's one-year limitation period commenced the next day, on July 12, 2017, and, absent statutory tolling, would have expired on July 12, 2018.  Harris v Dinwiddie, 642 F.3d 902, 906 n.6 (10th Cir. 2011). However, because he filed an application for postconviction relief on January 8, 2018, the one-year limitation period was tolled until August 3, 2018, when the OCCA affirmed the denial of his application for postconviction relief.  28 U.S.C. § 2244(d)(2).  Thereafter, Littlejohn had 185 days remaining, or until February 4, 2019, to file a federal habeas petition.  He filed the instant petition on September 13, 2018, and Crow concedes that the three claims asserted in the petition are timely under § 2244(d)(1)(A).  But Littlejohn identified the McGirt claim for the first time in the motion to stay he filed on May 10, 2021.  That claim is not timely under § 2244(d)(1)(A).

And Littlejohn fails to identify any other provision of § 2244(d)(1) that might provide him a later commencement date for his one-year limitation period as to the McGirt claim.  See 28 U.S.C. § 2244(d)(1)(B)-(D) (providing alternative commencement dates).  By describing McGirt as a "new retroactive decision," Littlejohn appears to argue that the McGirt claim is timely under

§ 2244(d)(1)(C) because he filed the motion to stay, or perhaps because he commenced state postconviction proceedings as to that claim, within one-year of the July 9, 2020, <u>McGirt</u> decision. Dkt. # 17, Mot., at 1.[9]  Section 2244(d)(1)(C) provides that the one-year limitation period may begin on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  But this provision does not apply because the Supreme Court did not newly recognize any constitutional rights in <u>McGirt</u>.  Instead, the <u>McGirt</u> Court relied on established precedent to determine that Congress did not disestablish the historical boundaries of the Muscogee (Creek) Nation Reservation, that the reservation thus remains "Indian country" as defined in 18 U.S.C. § 1151(a), and that, as a result, certain crimes committed by or against Native Americans within the boundaries of that reservation must be prosecuted in federal court.  140 S. Ct. 2462-68, 2479; <u>see</u> <u>also</u> <u>Berry v. Braggs</u>, Case No. 19-CV-0706-GKF-FHM, 2020 WL 6205849, at *6-7 (N.D. Okla. Oct. 22, 2020) (rejecting petitioner's reliance on § 2244(d)(1)(C) and reasoning that <u>McGirt</u> "did not recognize any new constitutional right relevant to petitioner's" claim that the state lacked jurisdiction to prosecute him for crimes committed within "Indian country").  Section 2244(d)(1)(C) does not apply to Littlejohn's circumstances and therefore does not render the newly-asserted <u>McGirt</u> claim timely.

---

[9]     It does not appear, either from the motion to stay or the response to that motion, that Littlejohn has filed an application for postconviction relief in state district court to begin the process of exhausting the <u>McGirt</u> claim. Dkt. ## 17, 18.  However, even assuming Littlejohn filed an application for postconviction relief around the same time he filed the motion to stay, nothing in the motion to stay explains the absence of any activity in state court between July 2020, when <u>McGirt</u> was decided, and May 2021, when Littlejohn first notified this Court of his intent to exhaust available state remedies as to the <u>McGirt</u> claim.  This unexplained delay further counsels against granting a stay.

Finally, Rule 15's relation-back principle works differently in habeas proceedings and Littlejohn cannot rely on that principle to render the McGirt claim timely.  Generally, an amendment to a pleading can relate back to the original filing date if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  FED. R. CIV. P. 15(c)(1)(B).  But, as just discussed, the AEDPA imposes strict time limits on filing a federal habeas petition and ordinarily requires a state prisoner to present all federal claims challenging the constitutional validity of his or her state-court judgment within one complete petition.  28 U.S.C. § 2244(d)(1)(A); Felix, 545 U.S. at 648, 654-56; see also 28 U.S.C. § 2244(b) (providing limited circumstances for state prisoner to file second or successive habeas petition under § 2254).  As a result, "[a]n amended habeas petition . . . does not relate back (and, thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  Felix, 545 U.S. at 650.  That the new ground for relief is related to the petitioner's trial and conviction is, by itself, insufficient to satisfy the relation-back principle.  Id.  Rather, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  Id. at 659.  Here, the newly-asserted McGirt claim relies on facts that have no nexus to the facts supporting Littlejohn's original claims that the state did not sufficiently invoke the trial court's jurisdiction by filing an unverified information, that the trial court erroneously admitted evidence at trial, and that trial counsel provided ineffective assistance by failing to challenge the allegedly defective information, renew an objection to the challenged evidence, and request a jury instruction.  Because the McGirt claim rests on facts that share no commonality with the facts underlying the original

claims asserted in the petition, Littlejohn cannot rely on the relation-back principle to render the McGirt claim timely.

In sum, the Court concludes that no stay is warranted to permit Littlejohn to exhaust available state remedies as to the McGirt claim because it would be futile to amend the petition to add the untimely McGirt claim once that claim is exhausted.  The Court therefore denies the motion to stay and will proceed to adjudicate the three claims asserted in the petition.

## III.   Petition for writ of habeas corpus

### A.   Claim one:  Unverified information deprived trial court of jurisdiction.

Littlejohn first claims that the trial court lacked jurisdiction because the state did not file a verified information to commence his criminal prosecution, as required by state law, thereby depriving him of his Fourteenth Amendment rights to due process and equal protection of the law. Dkt. # 2, Pet'r's Br., at 3-9.[10]

Littlejohn raised this claim for the first time in his application for postconviction relief, and the state district court rejected it both as procedurally barred and, in the alternative, as without merit. Dkt. # 8-7, Dist. Ct. Order, at 3-5.  The state district court concluded that, under state law, a verified information is not required to invoke the jurisdiction of a state district court.  Dkt. # 8-7, Dist. Ct. Order, at 4-5.  Rather, the state district court reasoned, "all that was required to invoke [the trial court's] jurisdiction was for the [s]tate to file an [i]nformation alleging a public offense occurring

_____

[10]   Within his arguments for claim one, Littlejohn also alleges that trial counsel was ineffective for failing to challenge the trial court's jurisdiction based on the allegedly defective information.  Dkt. # 2, Pet'r's Br., at 6-9.  Because Littlejohn specifically identifies claim three as asserting an ineffective-assistance-of-counsel claim, the Court will treat this part of claim one as part of claim three and will address this allegation only in its analysis of claim three.

in Tulsa County, and for a preliminary examination to be held." Dkt. # 8-7, Dist. Ct. Order, at 5. The state district court then found that the trial court properly exercised jurisdiction over Littlejohn's prosecution because the state complied with both requirements. Dkt. # 8-7, Dist. Ct. Order, at 5. The OCCA declined to consider the merits of this claim, finding that Littlejohn waived it by failing to raise it on direct appeal. Dkt. # 8-9, OCCA Order, at 2.

Crow contends that Littlejohn procedurally defaulted claim one in state court because the OCCA applied a procedural bar and declined to review that claim on the merits. Dkt. # 8, Resp. to Pet., at 4 n.5, 7-10. But Crow urges the Court to overlook the procedural default, review the claim de novo, and deny relief on the merits. Dkt. # 8, Resp. to Pet., at 4 n.5, 7-10. In his petition, Littlejohn appears to argue that the OCCA's application of a procedural bar was unreasonable because his claim implicates subject-matter jurisdiction and can therefore be raised at any time. Dkt. # 2, Pet'r's Br., at 5, 8-9; see, e.g., Wackerly v. State, 237 P.3d 795, 797 (Okla. Crim. App. 2010) ("[W]e have recognized that 'issues of subject matter jurisdiction are never waived and can therefore be raised on collateral appeal." (quoting Wallace v. State, 935 P.2d 366, 372 (1997))); but see Carter v. State, 936 P.2d 342, 344 (Okla. Crim. App. 1997) ("In his first proposition of error, [p]etitioner asserts that the felony [i]nformation filed against him was insufficient to invoke subject matter jurisdiction of the trial court. This is an issue which could have been raised on direct on appeal, but was not. Therefore, further consideration of the issue is waived."). However, Littlejohn did not file an optional reply brief and does not present any arguments in the petition that could be construed as asserting that he could make the necessary showings to overcome the procedural default of this

15

claim.  Under the circumstances of this case,[11] the Court agrees with Crow that it is more efficient

to overlook the procedural bar and address the merits of claim one.  However, because the state

district court adjudicated the claim on the merits, the Court will apply AEDPA's standards rather

than de novo review.  See Smith, 824 F.3d at 1242-43 (bypassing procedural bar issue but applying

§ 2254(d)'s standards when the OCCA found claim procedurally barred but also adjudicated the

claim on the merits); Douglas v. Workman, 560 F.3d 1156, 1170 (10th Cir. 2009) (noting that the

court's review of habeas claims was "governed by AEDPA's standards to the extent that the claims

were adjudicated on the merits by an Oklahoma state court").  And, to the extent the state district

court made factual findings relevant to this claim, the Court presumes those findings are correct

absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).

    As Crow acknowledges, a claim that the trial court lacked subject-matter jurisdiction over

the defendant's criminal prosecution presents a cognizable federal habeas claim under the Fourteenth

Amendment's due-process clause.  Dkt. # 8, Resp. to Pet., at 8; Yellowbear v. Wyo. Att'y Gen., 525

F.3d 921, 924 (10th Cir. 2008).  But Littlejohn's claim that he was tried by a court that lacked

---

[11]    The Court is not firmly convinced that Littlejohn procedurally defaulted his jurisdictional
        claim.  "Whether to apply procedural default doctrine out of respect for state rules is a federal
        question."  Wood v. Milyard, 721 F.3d 1190, 1194 (10th Cir. 2013).  True enough, the
        OCCA applied a procedural bar, finding that Littlejohn waived this claim by failing to raise
        it on direct appeal.  Ordinarily, "Oklahoma's rule barring post-conviction relief for claims
        that could have been raised on direct appeal constitutes an independent and adequate state
        ground barring habeas review."  Threat v. Laymon, 311 F. App'x 132, 135 (10th Cir. 2009)
        (unpublished) (citing McCracken v. Gibson, 268 F.3d 970, 976 (10th Cir. 2001).  But, as
        previously discussed, the adequacy of a state procedural rule depends on its evenhanded
        application "to all similar claims."  Duvall, 139 F.3d at 796-97 (quoting Hathorn, 457 U.S.
        at 263).  Here, the state district court and Crow both appear to view Littlejohn's claim as
        implicating the trial court's subject-matter jurisdiction.  Dkt. ## 8, 8-7.  But, in light of
        Wackerly and Carter, it is not clear that the OCCA evenhandedly applies its waiver rule to
        claims implicating subject-matter jurisdiction.  The Court finds it at least arguable that claim
        one is not procedurally defaulted.

jurisdiction, and that he was therefore denied due process and equal protection of the law, rests entirely on his understanding that Oklahoma statutes or the Oklahoma Constitution require the state to file a verified information to commence a criminal prosecution in state district court.  Dkt. # 2, Pet'r's Br., at 3-9.  Both parties' arguments appear to ask this Court to examine firsthand whether Oklahoma law does or does not require the filing of a verified information.  Dkt. # 2, Pet'r's Br., at 3-9; Dkt. # 8, Resp. to Pet., at 7-10.  But the state district court already resolved that state-law question when it determined that Littlejohn's view of state law was mistaken.  The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76 (2005); see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (reaffirming "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  Interpreting state law, the state district court determined that the state was not required to file a verified information to commence Littlejohn's prosecution; rather, the state district court reasoned, the state could properly invoke the trial court's jurisdiction by (1) filing an information alleging a public offense in the appropriate venue and (2) holding a preliminary examination.  Dkt # 8-7, Dist. Ct. Order, at 4-5.  The Court declines to reexamine the state district court's determination as to the proper interpretation of state law.  The state district court also found, as a matter of fact, that the state properly invoked the trial court's jurisdiction in Littlejohn's case by filing an information alleging a public offense in Tulsa County on March 11, 2015, and by holding a preliminary hearing on April 15, 2015.  Dkt. # 8-7, Dist. Ct. Order, at 5.  These factual findings are presumed correct absent clear and convincing evidence to the contrary, 28 U.S.C. § 2254(e)(1).  And, on the record presented, Littlejohn fails to overcome that presumption.

17

While the state district court did not expressly address the federal aspects of Littlejohn's claim, implicit in its decision is a determination that no due process or equal protection violations occurred because the state complied with state law and provided Littlejohn all the process he was due when it initiated his prosecution.[12]   Based on the state district court's determination that Oklahoma law does not require the particular procedure that Littlejohn claims he was due—namely, the initiation of a criminal prosecution by the filing of a verified information—the state district court's presumably correct findings that the state initiated Littlejohn's prosecution in accordance with state law, and the absence of anything in the record suggesting that the state treated Littlejohn differently than similarly situated defendants when it instituted his criminal proceeding, the Court concludes that it was entirely reasonable for the state district court to decide that Littlejohn failed to show he was prosecuted by a trial court that lacked jurisdiction.   Because the state court's decision completely undercuts Littlejohn's claim that he was prosecuted in violation of his Fourteenth Amendment rights to due process and equal protection, the Court denies the petition as to claim one.

---

[12]   Ordinarily, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted."   Johnson v. Williams, 568 U.S. 289, 301 (2013); see also Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").   Here, the state district court appeared to find that Littlejohn's due-process and equal-protection claims were procedurally barred, but the state district court nevertheless addressed the underlying state-law claim that was necessary to support the constitutional claims.   Under these circumstances, it is not readily apparent that the Richter presumption applies, but the Court finds it reasonable to apply that presumption given the state district court's explicit acknowledgment of the nexus between Littlejohn's state-law claim and his constitutional claims.

**B.      Claim two:  The trial court erroneously admitted "irrelevant" evidence.**

Next, Littlejohn claims that he was deprived of his fundamental right to a fair trial because the trial court erroneously admitted statements that Littlejohn made during a videotaped post-arrest interview regarding his personal views on punishment.  Dkt. # 2, Pet'r's Br., at 9.  He argues that his statements were not relevant to his guilt or innocence and were not relevant to the jury's sentencing decision because his recommendations regarding punishment did not fall within the statutory sentencing range.  Dkt. # 2, Pet'r's Br., at 9-14.  Littlejohn further argues that this error was not harmless because, absent the erroneous admission of these statements, the jury would not have convicted him or would not have recommended "such harsh punishments."  Dkt. # 2, Pet'r's Br., at 14.

**1.      Additional facts**

Littlejohn's convictions arose from choices he made and actions he took on Saturday, October 11, 2014, at the Lakewood Park Apartments in Tulsa, Oklahoma.  Dkt. # 9-3, Tr. Trial vol. 3, at 23-24 [347-48].  Early that morning, Patricia Zuniga and her husband, Juan Carmona-Chimal were getting ready for work when Littlejohn entered their apartment, uninvited, through an unlocked sliding glass door.  Dkt. # 9-3, Tr. Trial vol. 3, at 20-28 [344-52], 45-48 [370-72], 56-60 [380-84], 67-68 [391-92].  Brandishing a knife, Littlejohn approached Carmona-Chimal and demanded money.  Dkt. # 9-3, Tr. Trial vol. 3, at 27-28 [351-52], 59-63 [383-87].  When Zuniga walked out of the bathroom and into the bedroom, Littlejohn, holding the knife in one hand, used his other hand to pat down Carmona-Chimal to see if he had any weapons, then forced Carmona-Chimal into a closet.  Dkt. # 9-3, Tr. Trial vol. 3, at 28-30 [352-54], 61-63 [385-87].  Carmona-Chimal initially resisted, but Zuniga begged him to do as Littlejohn said.  Dkt. # 9-3, Tr. Trial vol. 3, at 29-30 [353-54].

19

Littlejohn, still holding the knife, walked toward Zuniga, and Zuniga told him she had some money in the dining room. Dkt. # 9-3, Tr. Trial vol. 3, at 30-31 [354-55]. Littlejohn followed Zuniga to the dining room and took her wallet after she tried to hand him the few dollars that she had inside the wallet. Dkt. # 9-3, Tr. Trial vol. 3, at 31-32 [355-56]. Littlejohn then walked Zuniga into a corner of the room, patted her down, took her cell phone, and directed her to remove her clothing. Dkt. # 9-3, Tr. Trial vol. 3, at 33-34 [357-58]. Zuniga resisted, but said she would comply when Littlejohn raised the knife and acted "like he was going to come at [her]." Dkt. # 9-3, Tr. Trial vol. 3, at 33-34 [357-58]. When Zuniga refused to remove her shirt, Littlejohn put the knife away, pulled the shirt off over her head, and sexually assaulted her by putting his hands and mouth on her breasts and neck. Dkt. # 9-3, Tr. Trial vol. 3, at 34-35 [358-59]. Littlejohn then "put his hand in [her] pants" and digitally penetrated her vagina. Dkt. # 9-3, Tr. Trial vol. 3, at 35 [359]. Littlejohn told Zuniga, who was on her knees on the floor, to "[s]uck his dick," and he "pulled his penis out and he forced [her] to give him oral sex." Dkt. # 9-3, Tr. Trial vol. 3, at 35-36 [359-60]. Zuniga saw what she believed was the butt of a gun in Littlejohn's pocket. Dkt. # 9-3, Tr. Trial vol. 3, at 36-37 [360-61]. Littlejohn then told Zuniga, who was crying and terrified, "to swallow his cum." Dkt. # 9-3, Tr. Trial vol. 3, at 37-38 [361-62].

Believing that she "was going to die," Zuniga did not comply and, when Littlejohn looked away, Zuniga spit the ejaculate into her hand and "rubbed it all over [her] pants and all over the carpet and all over the wall" so that "the police would find his DNA and they would know he was there." Dkt. # 9-3, Tr. Trial vol. 3, at 38 [362]. Littlejohn then shoved Zuniga to the floor, threatened to kill her if she called the police, and walked out of the apartment. Dkt. # 9-3, Tr. Trial vol. 3, at 39 [363]. After Littlejohn left, Zuniga let her husband out of the closet then went to the

bathroom to vomit.  Dkt. # 9-3, Tr. Trial vol. 3, at 39-40 [363-64].  After realizing they could not find their phones, Carmona-Chimal and Zuniga drove to a nearby convenience store and called 911 to report the crimes.  Dkt. # 9-3, Tr. Trial vol. 3, at 40-42 [364-66], 64-65 [388-89].

Law enforcement officers obtained DNA evidence from the crime scene but did not immediately develop a suspect.  Dkt. # 9-3, Tr. Trial vol. 3, at 72-79 [396-403], 85 [409].  In March 2015, they developed a suspect based on forensic analysis of DNA evidence obtained from the crime scene and from Zuniga's post-assault medical examination.  Dkt. # 9-3, Tr. Trial vol. 3, at 85 [409].[13] Calhoun presented a six-photograph lineup to Zuniga, and Zuniga identified Littlejohn as her attacker.  Dkt. # 9-3, Tr. Trial vol. 3, at 85-89 [409-13].  The next day, Detective Calhoun searched Littlejohn's residence and obtained his DNA through the use of a buccal swab, all pursuant to a warrant, and interviewed Littlejohn after first advising him that he had a right to remain silent and to speak with an attorney.  Dkt. # 9-3, Tr. Trial vol. 3, at 89-98 [413-22].

During the videotaped interview, Littlejohn admitted that he was in Zuniga's apartment, but he claimed that he went there after exchanging direct messages with a woman named "Lupita" on "Backpage," a website where prostitutes solicit customers.  Dkt. # 10, State's Ex. 21, at 18:30:51-

---

[13]   At trial, Detective Chase Calhoun testified that they developed a suspect based on the forensic analysis, but he did not specifically refer to Littlejohn as the suspect. Dkt. # 9-3, Tr. Trial vol. 3, at 85 [409].  During a pretrial motion hearing, the parties agreed to limit Calhoun's testimony in that manner to avoid presenting prejudicial evidence to the jury that law enforcement officers developed the lead after the Oklahoma Department of Corrections, who had Littlejohn's DNA on file due to his prior imprisonment, "got a preliminary match on" DNA found at the crime scene and notified the Tulsa Police Department of the match. Dkt. # 9-1, Tr. Trial vol. 1, at 9-10.

18:34:25.[14]  According to Littlejohn, when he showed up at the address he was provided, "Lupita"

let him in through the front door of the apartment, they talked and smoked marijuana for awhile, he

gave her $100 in exchange for oral sex, and he became irritated when she said he would have to pay

more for vaginal sex.  Dkt. # 10, State's Ex. 21, at 18:32:00-18:38:35.  Littlejohn also told Calhoun

that he was surprised to learn that there was another man in the apartment, and that Carmona-Chimal

threatened to call the police and robbed Littlejohn of approximately $300 in cash that he had in his

pocket before he let Littlejohn leave the apartment.  Dkt. # 10, State's Ex. 21, at 18:34:30-18:38:55.

Later in the interview, Littlejohn maintained his "Backpage" story, but he admitted to

Calhoun that he took no money with him when he went to the apartment, that he hoped to obtain

sexual services for free, and that he ultimately forced Zuniga to give him oral sex and placed his

fingers in her vagina without her consent.  Dkt. # 10, State's Ex. 10, at 18:40:00-18:47:32, 19:14:50-

19:26:00.  Throughout the interview, Calhoun questioned the credibility of Littlejohn's version of

events and attempted to elicit a full confession from Littlejohn by telling him that it might be in his

best interest to express remorse for his crimes, by telling him to think about his own children when

he was deciding whether to tell the truth, and by suggesting that Littlejohn should write an apology

letter to Zuniga or apologize to her in the courtroom.  Dkt. # 10, State's Ex. 21, 19:15:00-19:34:00.

At one point, Littlejohn said he would not want to write a letter because it would not make up for

the pain he caused and that if his daughter were the victim, Littlejohn would say "burn that

motherfucker."  Dkt. # 10, State's Ex. 21, at 19:28:00-19:28:43.  Calhoun then asked Littlejohn what

should happen to "guys like" him, and Littlejohn responded that he believed in an "eye for an eye,"

---

[14]     The Court's citations to the videotaped interview refer to the internal clock in the videotape
and are approximate.

and opined that the guy should have to "suck a guy's dick and let them stick their fingers in your ass." Dkt. # 10, State's Ex. 21, at 19:28:50-19:29:20.

Littlejohn filed a motion in limine before trial seeking to have several portions of the interview redacted, including his statements regarding his strong views on punishment, arguing that his statements regarding punishment were "simply irrelevant." Dkt. #9-8, O.R. vol. 1, at 93-96 [90-93]. During a pretrial hearing on the motion, the state agreed to redact certain portions of the videotaped interview objected to by Littlejohn, including "empty space," where Littlejohn was sitting alone in the interview room, and references to "other bad acts," including any discussion of Littlejohn's prior convictions of indecent exposure and failing to register as a sex offender and his references to time he spent in prison. Dkt. # 9-1, Tr. Trial vol. 1, at 4-5. The trial court reserved its ruling on Littlejohn's remaining objections and requests for redactions until after it could review the videotaped interview. Dkt. # 9-1, Tr. Trial vol. 1, at 5.

The next day, outside the presence of the jury, the trial court returned to the issue of redactions. Dkt. # 9-2, Tr. Trial vol. 2, at 123 [230]. The trial court advised both parties that it had reviewed the entire unredacted interview and confirmed that the state had agreed to remove references to any prior convictions and those portions of the interview when the defendant is sitting alone in the interview room. Dkt. # 9-2, Tr. Trial vol. 2, at 123-24 [230-31]. After an extended discussion, the trial court ultimately determined that Littlejohn's "admission ended at 18:54 and all the rest is talking about karma and God and what happens in prison and things like that," that the portion of the interview between 18:54 and 19:14:36 should be redacted, that the "block of conversation" from 19:26 to 19:32 could remain unredacted because "some of the items" in that portion of the interview discussing the "Backpage issue . . . could be relevant to the burglary charge,"

23

that "any other reference to prison and prior offenses" should be redacted, and that nothing after 19:34 was relevant.  Dkt. # 9-2, Tr. Trial vol. 2, at 123-32 [230-39].

At trial, the state moved to introduce the redacted version of the videotaped interview, as State's Exhibit 21, and, outside the presence of the jury, defense counsel renewed the motion in limine, particularly his "objection to any of the references to remorse or [Littlejohn's] thoughts on sentencing."  Dkt. # 9-3, Tr. Trial vol. 3, at 99-100 [423-24].  The trial court overruled the objections, stating that its "ruling stands."  Dkt. # 9-3, Tr. Trial vol. 3, at 100-01 [424-25].  The redacted version of the interview was then published to the jury.  Dkt. # 9-3, Tr. Trial vol. 3, at 101 [425], 131 [455].[15]

During jury deliberations, the jury asked to watch the videotaped interview.  Dkt. # 9-6, Trial Exhibits, at 49, 51.  The trial court brought the jury back into the courtroom and, with all parties present, played the redacted version of the interview with a further redaction of the portion of the interview between 19:30:45 and 19:32:12 when Calhoun made a reference to what Littlejohn's attorney might tell him about expressing remorse at trial.  Dkt. # 9-4, Tr. Trial vol. 4, at 107-15 [614-22].

---

[15]    The trial court interrupted the playing of the videotape after it heard a reference to what Littlejohn's attorney might tell him not to say at trial.  Dkt. # 9-3, Tr. Trial vol. 3, at 101-02 [425-26].  Outside the presence of the jury, defense counsel moved for a mistrial, and the trial court denied the motion, granted counsel's request to admonish the jury, and granted counsel's request to admit the unredacted version of the videotaped interview, for appeal purposes, as State's Exhibit 21A.  Dkt. # 9-3, Tr. Trial vol. 3, at 102-18 [426-42].  When the jury returned to the courtroom, the trial court admonished the jury to disregard any statements made by the detective or Littlejohn relating to Littlejohn's potential discussions with his attorneys, and the remaining minute or so of the videotaped interview was played for the jury.  Dkt. # 9-3, Tr. Trial vol. 3, at 130-31 [454-55].  Littlejohn does not raise any claim in this proceeding relating to the denial of his motion for mistrial.

### 2.    The OCCA's decision

On direct appeal, Littlejohn argued that the trial court abused its discretion, resulting in unfair prejudice in both stages of his bifurcated trial,[16] when it permitted the state to introduce his "irrelevant" statements regarding his thoughts on punishment and that the trial court compounded that error by permitting the jury to hear those statements again during jury deliberations. Dkt. # 8-4, OCCA Op., at 2-3.  The OCCA rejected this claim on the merits.

The OCCA found no abuse of discretion, either in the trial court's initial playing or in its replaying of the redacted videotaped interview, reasoning that Littlejohn's "challenged statements, taken in context, were statements against interest which demonstrated consciousness of guilt" and "were therefore relevant." Dkt. # 8-4, OCCA Op., at 3.  The OCCA further held that "to the extent any of [Littlejohn's] statements relating to punishment in the challenged segment of his interview were irrelevant or more prejudicial than probative, we find such error did not have a substantial and injurious effect or influence in the jury's first stage guilt determinations or second stage punishment recommendations." Dkt. # 8-4, OCCA Op., at 3-4 (citing <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946), and <u>Simpson v. State</u>, 876 P.3d 690, 702 (Okla. Crim. App. 1994)).  The OCCA reasoned that Littlejohn's "statements relating to punishment in no way contributed to" his convictions of forcible oral sodomy and rape by instrumentation and that "in light of the heinous nature of [his] crimes and his prior felony convictions, we are satisfied the challenged evidence did not impact the jury's recommended life sentences for these offenses." Dkt. # 8-4, OCCA Op., at 4.

---

[16]    Under Oklahoma law, when the defendant is alleged to have prior felony convictions, a jury trial proceeds in two stages with the jury first determining guilt, then determining the existence, if any, of prior felony convictions and recommending the appropriate sentence. OKLA. STAT. tit. 22, § 860.1.

### 3.    Analysis and conclusion

Littlejohn claims that the erroneous admission of his irrelevant statements about punishment was so harmful and prejudicial that it deprived him of a fair trial.  Dkt. # 2, Pet'r's Br., at 9-14. Littlejohn appears to argue that the OCCA's decision as to this claim is therefore based on an unreasonable application of clearly established federal law.  Dkt. # 2, Pet'r's Br., at 13.

 Crow responds to claim two with a three-part argument.  First, he contends that claim two alleges only an error of state law that is not cognizable on habeas review.  Dkt. # 8, Resp. to Pet., at 11-12; see Hooks v. Workman, 689 F.3d 1148, 1180 (10th Cir. 2012) (noting that habeas review is not available to correct state-law evidentiary errors and that the purpose of habeas review is to vindicate constitutional rights).  Second, Crow contends that even if Littlejohn's claim fairly alleges that the state-law evidentiary error denied him a fair trial, Littlejohn fails to establish that he was deprived of due process.  Dkt. # 8, Resp. to Pet., at 12-16.  Third, Crow contends that § 2254(d) bars relief because the OCCA's decision that any error in admitting the challenged evidence was harmless is not contrary to, or based on an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.  Dkt. # 8, Resp. to Pet., at 16-20.

Following this Court's review of the record, the Court finds it unnecessary to address each of these contentions.  First, the Court finds it reasonable to read Littlejohn's petition and supporting brief as alleging more than just a state-law evidentiary error.  As just stated, Littlejohn claims that the admission of his irrelevant statements was so prejudicial that he was deprived of a fair trial. Given his pro se status, this allegation is sufficient to allege a violation of his right to due process.

Second, as discussed next, even on de novo review,[17] the record does not support the alleged due process violation, making it unnecessary to consider the reasonableness of the OCCA's harmless-error analysis.

As Crow acknowledges, habeas relief may be available if an error of state law, even one that involves the erroneous admission of evidence, "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." Hooks, 689 F.3d at 1180 (quoting Revilla, 283 F.3d at 1212). In applying the fundamental-fairness analysis, a court must consider the allegedly erroneous admission of evidence in light of the record as a whole.

---

[17]    As previously mentioned, this Court ordinarily must presume that a state court has addressed the merits of a federal claim when the petitioner presents that claim in state court, even if it appears that the state court "simply overlooked" the federal claim. Johnson, 568 U.S. at 298. But here the Court finds it appropriate to review this claim de novo because it is not clear from the record that Littlejohn fairly presented this claim to the OCCA as a federal due-process claim. In Littlejohn's direct appeal brief, he relied solely on state law to argue that the trial court abused its discretion by admitting his challenged statements and to argue that the "error was not harmless." Dkt. # 8-1, Appellant's Br., at 11-13. Further, it appears from the OCCA's decision that it neither construed nor adjudicated the alleged evidentiary error as a constitutional claim. Dkt. # 8-4, OCCA Op., at 2-4. Notably, the OCCA found no error but determined, in the alternative, that if an error occurred, that error was harmless under the more forgiving harmless-error standard that the OCCA applies to nonconstitutional errors. Dkt. # 8-4, OCCA Op., at 3-4; see Simpson, 876 P.2d at 701-02 (recognizing that constitutional errors are subject to harmless-error analysis under the reasonable-doubt standard set forth in Chapman, and adopting the less demanding standard set forth in Kotteakos for nonconstitutional errors). On this record, it appears that the federal due-process claim is not exhausted. See Anderson v. Harless, 459 U.S. 4, 6 (1982) (discussing exhaustion requirement and explaining that "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts [. . .] or that a somewhat similar state-law claim was made" (internal citations omitted)). But, because the OCCA likely would impose a procedural bar should Littlejohn attempt to return to state court now to raise the due-process claim, the Court finds that the claim is subject to an anticipatory procedural bar and therefore technically exhausted but procedurally defaulted. See Grant v. Royal, 886 F.3d 874, 890-92 (10th Cir. 2018) (discussing exhaustion, anticipatory procedural bar, and procedural default). And, as with claim one, the Court chooses to overlook the procedural default because the claim may be denied on the merits. Smith, 824 F.3d at 1242.

Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002).  Having independently reviewed the trial transcripts and all exhibits admitted at trial, including State's Exhibit 21, the Court cannot say that the admission of the challenged statements deprived Littlejohn of a fair trial.  As previously discussed, see supra discussion section III.B.1., at 19-22, Zuniga and Carmona-Chimal both testified at trial and gave consistent accounts of the events that occurred at their apartment on October 11, 2014.  Both identified Littlejohn as the man who entered their apartment, uninvited, forced Carmona-Chimal into a closet at knifepoint, robbed the couple, and sexually assaulted, raped, and sodomized Zuniga.  Zuniga described, in detail, the sex acts she was forced to perform and the fear that drove her to beg her husband to get into the closet and to wipe Littlejohn's ejaculate on her clothing and nearby surfaces in case Littlejohn killed her.  In contrast, Littlejohn told the jury, through his interview statements, that he was invited to the apartment by a prostitute he met on the internet, that he paid for her services before the couple in the apartment robbed him, that he actually had no money with him when he went to the apartment because he hoped to obtain sexual services for free, and that he eventually forced Zuniga to engage in sex acts without her consent because, in his view, bad things have happened to him so bad things should happen to others. Dkt. # 10, State's Ex. 21, at 19:27:00-19:27:16.

In light of Zuniga's and Carmona-Chimal's consistent account of the crimes committed against them, the DNA evidence corroborating their account, and Littlejohn's varying versions of events that took place at Zuniga's apartment, the Court finds that the admission of Littlejohn's statements on punishment were not so prejudicial as to infect the entire trial and deprive him of due process.  Further, even assuming a constitutional error occurred, the Court finds that the error had no substantial or injurious effect on Littlejohn's substantial rights and was therefore harmless under

<u>Brecht</u>.  <u>See</u> <u>Fry</u>, 551 U.S. at 121-22.  For these reasons, the Court denies the petition as to claim two.

  **C.**  **Claim three:  Trial counsel provided ineffective assistance.**

  In his last claim, Littlejohn alleges that trial counsel performed deficiently and prejudicially, in violation of his Sixth Amendment right to counsel, (1) by failing to renew his objection to the grounds of relevancy before the redacted videotaped interview, that included Littlejohn's statements regarding his views on punishment, was played for a second time during jury deliberations, (2) by failing to request a limiting instruction be given during the first stage of his trial to advise the jury "that any statements by the detective within the video are not relevant but have been received solely for the limited purpose of providing context for the defendant's answers," and (3) by failing to challenge the trial court's alleged lack of jurisdiction based on the state's failure to file a verified information to commence his prosecution.  Dkt. # 2, Pet'r's Br., at 6-9, 14-19.  Littlejohn alleges that these deficiencies resulted in prejudice because, absent trial counsel's alleged errors, the jury would not have convicted him on all counts and would not have recommended life sentences.  Dkt. # 2, Pet'r's Br., at 15-17, 19.

  Littlejohn raised his ineffective-assistance-of-counsel claim, in part, on direct appeal and, in part, through his application for postconviction relief.  The OCCA rejected a portion of his claim on the merits and found that he waived a portion of his claim.  For ease of discussion, the Court first addresses the Sixth Amendment claim, as it was presented to the OCCA on direct appeal, then addresses the Sixth Amendment claim, as it was presented to the OCCA on postconviction appeal.

### 1.      Direct appeal

On direct appeal, Littlejohn alleged that trial counsel was ineffective for failing to renew an objection to the admission of Littlejohn's statements regarding punishment before the videotaped interview was replayed during jury deliberations and for failing to request a limiting instruction advising the jury the limited purpose for which it could consider Detective Calhoun's interview statements.  Dkt. # 8-1, Appellant's Br., at 14-16.

Applying the two-part inquiry from Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires a defendant to show deficient performance and resulting prejudice, the OCCA rejected Littlejohn's Sixth Amendment claim.  Dkt. # 8-4, OCCA Op., at 4-6.  First, citing its decision that the admission of Littlejohn's statements relating to punishment was not error or, if error, "was harmless in light of the overwhelming evidence of guilt," the OCCA found that "trial counsel cannot be found to have been ineffective for his failure to renew his objection prior to the video being replayed for the jury during their first stage deliberations."  Dkt. # 8-4, OCCA Op., at 5.  Second, the OCCA determined that regardless of whether trial counsel performed deficiently by failing to request the limiting instruction described by Littlejohn, Littlejohn could not establish prejudice because, based on "the overwhelming evidence against [him]," he could not "show there is a reasonable probability that but for trial counsel's failure to request the limiting instruction the outcome of his trial would have been different."  Dkt. # 8-4, OCCA Op., at 5.

Littlejohn appears to argue that the OCCA unreasonably applied Strickland because, in his view, the OCCA failed to separately consider, on the one hand, his challenge to the admission of his allegedly "irrelevant" statements and, on the other hand, his challenge to trial counsel's failure to renew his objection to the admission of those statements before the videotaped interview was

replayed during jury deliberations and trial counsel's additional failure to request a limiting instruction.  Dkt. # 2, Pet'r's Br., at 14-19.  Crow contends that § 2254(d) bars relief as to this portion of the Sixth Amendment claim.  Dkt. # 8, Resp. to Pet., at 21-29.

The Court agrees that this portion of claim three is subject to review under § 2254(d) and that Littlejohn has not shown that the OCCA's decision was objectively unreasonable.  As previously stated, to establish a Sixth Amendment violation, a defendant must show deficient performance and resulting prejudice.  Strickland, 466 U.S. at 687.   A reviewing court's "scrutiny of counsel's performance must be highly deferential," and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Even if counsel's performance is shown to be unreasonable under this deferential standard, Strickland requires the defendant to show prejudice, i.e., to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  When a state court adjudicates the merits of a Strickland claim, "[t]he pivotal question" on habeas review "is whether the state court's application of the Strickland standard was unreasonable."  Richter, 562 U.S. at 101.  This is so because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

Here, there is more than one reasonable argument to support the OCCA's view that trial counsel satisfied Strickland's deferential standard.  First, based on the OCCA's determination that the trial court did not err in admitting Littlejohn's statements relating to punishment because, in the OCCA's view, those statements were relevant and admissible, it was reasonable for the OCCA to

further determine that trial counsel did not perform deficiently by failing to renew his objection to the admission of those statements before the videotaped interview was played for a second time during jury deliberations.  See Jeremy Williams, 782 F.3d at 1198 ("[W]hen a defendant fails to show that a trial court's admission of evidence was improper for some reason, it likely follows that the lawyer did not perform deficiently by failing to object to its admission.").  Second, aside from the OCCA's view regarding the relevance and admissibility of those statements, it is clear from the record that trial counsel argued before and during trial that Littlejohn's statements regarding punishment were irrelevant and prejudicial and should not be admitted.  Dkt. # 9-1, Tr. Trial vol. 1, at 4-5; Dkt. # 9-2, Tr. Trial vol. 2, at 123-32 [230-39]; Dkt. # 9-3, Tr. Trial vol. 3, at 99-101 [423-25]; Dkt. # 9-8, O.R. vol. 1, at 93-96 [90-93].  This further supports the OCCA's decision that trial counsel's performance did not fall below objective standards of reasonableness when he failed to renew his objection to the admission of those statements, for a third time, before the jury heard those statements for a second time.  Third, it was objectively reasonable for the OCCA to forego an in-depth discussion of whether trial counsel performed deficiently by failing to request a limiting instruction regarding the purpose for which the jury could consider Detective Calhoun's statements because the OCCA concluded that even if it assumed deficient performance as to that issue, Littlejohn could not show prejudice "in light of the overwhelming evidence" of his guilt.  Dkt. # 8-4, OCCA Op., at 5.  Strickland itself suggests that if a reviewing court can resolve a claim of ineffective assistance of counsel based on the lack of prejudice, the reviewing court should do so. See 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

On the record presented, Littlejohn cannot show that the OCCA unreasonably applied Strickland to reject his Sixth Amendment claim, as that claim was presented to the OCCA on direct appeal. As a result, § 2254(d) bars relief as to this portion of claim three.

### 2.  Postconviction appeal

In his application for postconviction relief, Littlejohn further alleged that trial counsel was ineffective for failing to challenge the trial court's jurisdiction based on Littlejohn's argument that the state was required to file a verified information to commence his prosecution. Dkt. # 8-5, Appl., at 6-9. The state district court found that the ineffective-assistance-of-counsel claim was procedurally barred because it could have been raised on direct appeal, and the OCCA affirmed the denial of postconviction relief as to this portion of his Sixth Amendment claim on the same ground. Dkt. # 8-7, Dist. Ct. Order, at 4; Dkt. # 8-9, OCCA Order, at 2.

In his petition, Littlejohn asserts that trial counsel "acted in an 'objectively unreasonable' and ineffective manner" by failing to seek dismissal of his case based on the trial court's alleged lack of subject-matter jurisdiction. Dkt. # 2, Pet'r's Br., at 8.[18] He further argues that the state district court and the OCCA "unreasonably" determined that this portion of his Sixth Amendment claim was waived by his failure to raise it on direct appeal. Dkt. # 2, Pet'r's Br., at 8. Crow does not appear to address this portion of the Sixth Amendment claim, in either his response to Littlejohn's claim one or claim three arguments. Dkt. # 8, Resp. to Pet., at 7-10, 21-29.

Despite the limited briefing of this particular part of Littlejohn's Sixth Amendment claim, the Court finds that the record supports applying the procedural-default doctrine to bar relief as to

---

[18]   As previously noted, Littlejohn includes this argument as part of claim one, but the Court liberally construes this allegation as part of the ineffective-assistance-of-counsel claim asserted in claim three. See supra n.10.

this part of his claim.  As just discussed, both state courts found that Littlejohn failed to include this

allegation of ineffectiveness when he raised an ineffective-assistance-of-counsel claim on direct

appeal and both courts therefore found this part of his claim waived.  Dkt. # 8-7, Dist. Ct. Order, at

4; Dkt. # 8-9, OCCA Order, at 2.  And, with a possible exception for claims asserting that the trial

court lacked subject-matter jurisdiction over a defendant's criminal prosecution, the OCCA routinely

and evenhandedly applies its waiver rule when defendants assert claims in a first application for

postconviction relief that the defendant could have raised on direct appeal.  See e.g., Threat, 311 F.

App'x at 135 ("Oklahoma's rule barring post-conviction relief for claims that could have been raised

on direct appeal constitutes an independent and adequate state ground barring habeas review."); Hale

v. Gibson, 227 F.3d 1298, 1328 (10th Cir. 2000) ("Oklahoma bars collateral review of claims

actually raised on direct appeal or those that could have been raised on direct appeal but were not.")

Littlejohn makes no showings, or even any arguments, to suggest that he can overcome the

procedural default of this portion of his Sixth Amendment claim.  The Court therefore finds that this

portion of the Sixth Amendment claim is barred from habeas review.  Davila, 137 S. Ct. at 2064-65.

For that reason, the Court denies relief as to this portion of claim three.[19]

### 3.    Conclusion

As to the portion of the Sixth Amendment claim that Littlejohn raised on direct appeal,

§ 2254(d) bars relief.  As to the portion of the Sixth Amendment claim that Littlejohn raised on

---

[19]    Even if this Court were to overlook the procedural default of this portion of the Sixth
Amendment claim, the Court would deny relief on the merits.  As discussed in the analysis
of claim one, Littlejohn's claim that the state's failure to file a verified information deprived
the trial court of subject-matter jurisdiction is without merit.  See supra, discussion section
III.A., at 14-18.  Trial counsel thus did not perform deficiently by failing to challenge to the
trial court's jurisdiction on that basis.

postconviction appeal, the procedural-default doctrine bars relief.  The Court therefore denies the petition as to claim three.

***CONCLUSION***

Because the Court concludes that it would be futile for Littlejohn to amend his petition to add an untimely and unexhausted claim that the state lacked jurisdiction to prosecute him in light of McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), the Court denies his motion for a stay.  Further, because the Court concludes that Littlejohn has not demonstrated that he is being held in state custody in violation of the United States Constitution or other federal law, as required by 28 U.S.C. § 2254(a), the Court denies his petition for writ of habeas corpus.  Finally, because the Court concludes that reasonable jurists would not debate this Court's assessment of Littlejohn's constitutional claims or its determination that part of his Sixth Amendment claim is procedurally defaulted, the Court declines to issue a certificate of appealability.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall **note** the substitution of Scott Crow in place of Joe Allbaugh as party respondent.

2. The motion to stay (Dkt. # 17) is **denied**.

3. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

4. A certificate of appealability is **denied**.

5. A separate judgment shall be entered in this matter.

**DATED** this 20th day of July, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE